**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robin R Kavanaugh, | No. CV-19-04771-PHX-MTL |
| Plaintiff, | **ORDER** |
| v. | |
| Commissioner of Social Security Administration, | |
| Defendant. | |

At issue is the denial of Plaintiff Robin Kavanaugh's Application for Disability Insurance Benefits by the Social Security Administration under the Social Security Act. Plaintiff filed a Complaint (Doc. 1) with this Court seeking judicial review of that denial, and the Court now addresses Plaintiff's Opening Brief (Doc. 13, Pl. Br.), Defendant Social Security Administration Commissioner's Answering Brief (Doc. 18, Def. Br.), and Plaintiff's Reply Brief (Doc. 19, Reply). The Court has reviewed the briefs and Administrative Record (Doc. 12, R.) and now affirms the Administrative Law Judge's ("ALJ") decision. (R. at 18–37.)

## I. BACKGROUND

Plaintiff applied for disability insurance benefits on June 25, 2015, for a period of disability beginning on March 31, 2015. (R. at 239–45). The Commissioner denied Plaintiff's application initially and on reconsideration (R. at 76–104, 109–16). On May 8, 2018, Plaintiff and a vocational expert testified at an administrative hearing before an ALJ. (R. at 38–75). In a decision dated July 16, 2018, the ALJ found that Plaintiff was not

disabled (R. at 18–37). The Appeals Council subsequently denied review, making the ALJ's decision the final decision of the Commissioner (R. at 1–6). Plaintiff now seeks judicial review of the Commissioner's decision pursuant to 42 U.S.C. § 405(g).

The pertinent medical evidence will be discussed in addressing the issues raised by Plaintiff. Upon considering the medical records and opinions, the ALJ evaluated Plaintiff's disability based on the following severe impairments: Morton's neuroma on the third interspace of left foot; bilateral De Quervain's tenosynovitis; and a left medial meniscus tear. (R. at 24.) The ALJ reviewed the entire record, including medical records and statements from Plaintiff, a vocational expert, two State agency medical consultants, Plaintiff's primary care physician and podiatrist, a psychological examiner, a State agency psychological consultant, and Plaintiff's counselor. (R. at 24–30.)

The ALJ found that Plaintiff had "mild" mental impairments in the four functional areas set out at 20 C.F.R., Part 404, Subpart P, Appendix 1. (*Id.*) The ALJ also noted that Plaintiff returned to work at "substantial gainful activity levels" on March 13, 2017. (R. at 23.) The ALJ concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she needed to alternate positions every 45 to 60 minutes for a brief, three- to four-minute stretch break while remaining at her workstation. The ALJ also found that Plaintiff "could never operate foot controls with her lower left extremity; occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; occasionally balance, stoop, and crouch; never kneel or crawl; and frequently handle and finger bilaterally. She needed to avoid extreme cold and hazards, including moving machinery, unprotected heights, and uneven terrain." (*Id.*)

In making these findings, the ALJ acknowledged that there was objective evidence of medical impairments including a left medial meniscal tear followed by surgery, and left foot pain and numbness followed by at least two surgeries. The ALJ nevertheless found that Plaintiff had a "highly positive response to treatment," minimal use of prescription pain medication, and limited treatment for individual impairments. (R. at 30.) Based on Plaintiff's RFC, the ALJ determined that Plaintiff was able to perform past relevant work

as a cashier checker, general office clerk, food server, data entry clerk or clerical assistant, office manager, or sales clerk. (*Id*.) Accordingly, the ALJ found that Plaintiff was not disabled during the relevant period. (*Id*.)

## II.    LEGAL STANDARD

In determining whether to reverse an ALJ's decision, the district court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517 n.13 (9th Cir. 2001). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is more than a scintilla, but less than a preponderance; it is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id*. To determine whether substantial evidence supports a decision, the Court must consider the record as a whole and may not affirm simply by isolating a "specific quantum of supporting evidence." *Id*. Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002) (citations omitted).

To determine whether a claimant is disabled, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id*. At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. *Id*. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id*. At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *Id*. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. If not, the ALJ proceeds to step four. *Id*. At step four, the ALJ assesses the

claimant's RFC and determines whether the claimant is still capable of performing past relevant work. *Id.* § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where the ALJ determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. *Id.* § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III.    ANALYSIS

Plaintiff raises three arguments. First, she argues that the ALJ erred by failing to incorporate Plaintiff's mental impairments into the RCF. (Pl. Br. at 3.) Second, Plaintiff argues that the ALJ impermissibly substituted her own lay opinion for that of Plaintiff's primary care physician. (*Id.* at 5.) Third, Plaintiff argues that the ALJ was not properly appointed under the Appointments Clause of the U.S. Constitution. (*Id.* at 8.)  As addressed in turn below, the Court disagrees with each of these arguments.

### A.    Impact of Mental Impairments

Plaintiff first moves to remand on grounds that the ALJ did not adequately incorporate Plaintiff's mental impairments into the RFC. (*Id.* at 4.) The RFC, which is determined at step four of the disability determination, is "an assessment of a claimant's ability to perform work-related physical and mental activities in a work setting on a sustained basis." 20 C.F.R. § 404.1545(a). As noted, the ALJ concluded that Plaintiff had the RFC to perform light work as defined in 20 C.F.R. § 404.1567(b), except that she needed to alternate positions every 45 to 60 minutes for a brief stretch break, in addition to other physical limitations. (R. at 25.) Plaintiff argues that because the ALJ found that Plaintiff had mild mental impairments, the ALJ was also required to address these limitations in the RFC. Defendant argues in response that the ALJ was not required to incorporate these "mild" limitations into the RFC. (Def. Br. at 6.) The Court agrees with Defendant.

As noted, the ALJ must determine whether the claimant has a medically severe physical or mental impairment at step two of the disability determination. The ALJ is bound

by 20 C.F.R. § 404.1520a in making this assessment, which requires a "special technique" known as the psychiatric review technique ("PRT"). 20 C.F.R. § 404.1520a. The ALJ must also complete a "PRT Form" and append it or otherwise incorporate it to the decision. *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 725 (9th Cir. 2011). The PRT requires the reviewer to evaluate and document a claimant's symptoms, signs, and laboratory findings to determine whether one or more medically determinable mental impairments exists. If so, the degree of resulting functional limitation is rated in four "broad functional areas" (activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decompensation). These four areas are known as the "Paragraph B criteria" based on their location on the PRT Form. The ALJ must rate the limitation in each area on a scale of "none," "mild," "moderate," "marked," or "extreme." 20 C.F.R. § 404.1520a(c)(3).

Here, the ALJ found that Plaintiff had "mild" limitations in all four functional areas (R. at 24–25.) The regulations provide that if the degree of limitation is either "none" or "mild" in each area, the ALJ will generally conclude that a mental impairment is non-severe, "unless the evidence otherwise indicates that there is more than a minimal limitation in [the claimant's] ability to do basic work activities[.]" 20 C.F.R. § 404.1520a(d)(1). The ALJ therefore properly concluded that Plaintiff had non-severe mental impairments. (R. at 24–25.) As Defendant notes, Plaintiff does not contest this point. (Def. Br. at 6.) Had Plaintiff's mental impairments been "severe," the ALJ would have been required to determine if they met or were equivalent in severity to a listed mental disorder. *Id.* § 404.1520a(d)(2). Because they were not, the ALJ proceeded to determine Plaintiff's RFC. *Id.* § 404.1520a(a)(4)(iv).

Social security regulations make clear that the PRT findings and the RFC are distinct. The Social Security Rulings[1] provide that the limitations identified in "Paragraph

---

[1] Social Security Rulings (SSRs) "do not carry the 'force of law,' but are binding on ALJs nonetheless." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009). They "reflect the official interpretation of the [SSA] and are entitled to 'some deference' as long as they are consistent with the Social Security Act and regulations." *Id.* (alteration in

B" criteria "are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96-8p, 1996 WL 374184 (July 2, 1996). The RFC assessment, however, "requires a more detailed assessment by itemizing various functions." *Id*. While the adjudicator must "*consider* limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe,'" in assessing the RFC, those limitations need not be *incorporated* into the RCF. *Id*. (emphasis added).

Indeed, numerous courts have concluded that "mild" PRT findings need not be incorporated into the RFC. *See, e.g.*, *Soto v. Colvin*, No. EDCV 12-1877-OP, 2013 WL 3071263, at *2 (C.D. Cal. June 17, 2013) ("[T]he ALJ was not required to include the moderate limitations in activities of daily living and social functioning in her assessment of Plaintiff's RFC."); *Ball v. Colvin*, No. CV 14-2110-DFM, 2015 WL 2345652, at *3 (C.D. Cal. May 15, 2015) ("As the ALJ found that Plaintiff's mental impairments were minimal, the ALJ was not required to include them in Plaintiff's RFC."); *Lindsay v. Berryhill*, No. SACV 17-01545-AFM, 2018 WL 3487167, at *6 (C.D. Cal. July 18, 2018) (The regulations "do not require the ALJ to *include* limitations in the RFC if the record supports a conclusion that the non-severe impairment does not cause a significant limitation in the claimant's ability to work.").[2] This Court agrees.

Further, in this case, the ALJ specifically recognized the distinction between the step two analysis and the RFC assessment. The ALJ's decision stated, "[t]he limitations identified in the 'paragraph B' criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process." (R. at 25). She further stated that the RFC assessment "reflects the degree of limitation I have found in the 'paragraph B' mental function analysis." (*Id*.)

---

original) (quoting *Avenetti v. Barnhart*, 456 F.3d 1122, 1124 (9th Cir. 2006)).

[2] Plaintiff relies on *Thomas v. Barnhart*, 278 F.3d 947, 956 (9th Cir. 2002) for the proposition that "[a]lthough the Ninth Circuit does not require a verbatim recitation of the PRT finding in the RFC finding, the ALJ must account for such proven limitations somewhere in her RFC." (Pl. Br. at 4.) *Thomas* simply does not support such a conclusion.

Plaintiff is therefore incorrect in asserting that her mental impairments were not "accounted for" in the RFC (Pl. Br. at 5); rather, the ALJ specifically considered but decided not to incorporate them.

Plaintiff also briefly states that that ALJ failed to incorporate her mental limitations in the hypothetical question posed to the vocational expert. (Pl. Br. at 3; R. at 69–71.)  At step five of the disability determination, the ALJ may pose hypothetical questions to a vocational expert. The vocational expert then "translates [these] factual scenarios into realistic job market probabilities" for the claimant. *Id.* Because the ALJ did not err in omitting Plaintiff's mental limitations from the RFC, "[i]t follows that the ALJ did not err by failing to include any mental limitations in his hypothetical questions to the [vocational expert] or by relying on the [vocational expert]'s opinion in reaching his disability determination." *Lindsay*, 2018 WL 3487167, at *6. *See also Sanchez v. Colvin*, No. CV 15-06532-DFM, 2016 WL 7017221, at *6 (C.D. Cal. Dec. 1, 2016) (The plaintiff's argument that the ALJ failed to incorporate the mild mental limitations into the hypothetical question "conflates the step two and three analysis with the separate and distinct RFC assessment at steps four and five.").

The Court agrees with Defendant that the ALJ's assessment of Plaintiff's mental impairments meets the substantial evidence standard of review. (Def. Br. at 6.) The Court will not remand on this basis.

### B.      Primary Care Physician Opinion

Plaintiff also argues that the ALJ erred by "substituting her lay opinion for that of a treating physician without any substantial basis for doing so." (Pl. Br. at 7.) Specifically, she objects to the ALJ's rejection of her primary care physician's opinion that Plaintiff needed to elevate her legs for at least one-third of the workday. Plaintiff requests that the Court remand for an award of benefits or "for a full and fair determination" of the RFC. (*Id.*) Defendant responds that the ALJ properly assigned little weight to the physician's opinion and set forth specific reasons for doing so. (Def. Br. at 10.) The Court agrees with Defendant.

An ALJ must consider all medical opinions when assessing a claimant's RFC. The regulations instruct that the weight assigned to medical opinions is determined based on factors including the examining relationship, treatment relationship, the length and nature of treatment, supportability, consistency, and specialization, among other factors. 20 C.F.R. § 404.1527(c). That said, as Plaintiff notes, "special weight" is generally accorded to opinions of the claimant's treating physician. *Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). *See also Orn*, 495 F.3d at 631 ("By rule, the Social Security Administration favors the opinion of a treating physician over non-treating physicians.").

Nonetheless, despite the deference generally afforded to treating physicians, the ALJ is not required to rely on them. If a treating physician's opinion is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques" or is "inconsistent with the other substantial evidence in [the] case record," the ALJ need not give it controlling weight. *Id*. § 404.1527(c)(2); s*ee also Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001) (an ALJ may discredit treating physicians' opinions that are conclusory, brief, and unsupported by the record as a whole or by objective medical findings). If a treating physician's opinion is not given controlling weight, the ALJ must consider the factors listed in 20 C.F.R. § 404.1527(c) in assigning its relative weight. When rejecting a treating physician's testimony, "the ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct." *Orn*, 495 F.3d at 632 (citing *Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988)).

Here, the ALJ gave "little weight" to Plaintiff's treating physician, Aaron Clark, M.D. (R. 28.) Dr. Clark indicated in a medical report form that, among other things, Plaintiff could continuously sit for no longer than 15 minutes and stand for no longer than 20 minutes at a time; that she would need to take three to four working breaks per hour; and her legs should be elevated for 33% of an eight-hour workday. (R. at 642–44). The form contained no narrative explanation for these findings. (*Id*.) The ALJ concluded that this opinion was "excessively restrictive." She stated:

> Were the claimant to require 15- to 30- minute breaks 3 to 4 times per hour, she would be able to work for 15 minutes per hour at most, which would allow her to work for a total of only 2 hours maximum in an 8-hour workday. The claimant's multiple reports of positive response to treatment, such as experiencing only 'a little discomfort' and 'doing great,' strongly undermine the validity of this opinion. The weak evidence in support of a need for lower extremity elevation has already been discussed above. Moreover, the claimant's generally normal gait and essentially nonexistent treatment for hand issues during the period under consideration serve to further undermine this opinion. For these reasons, Dr. Clark's opinion merits little weight.

(R. at 28.)

The Court agrees with Defendant that the ALJ's reasons for assigning little weight to Dr. Clark's opinion were specific, legitimate, and supported by substantial evidence.[3] The ALJ noted that Dr. Clark's opinion was undermined by Plaintiff's own response to treatment; that it was inconsistent with objective findings; and that Dr. Clark "did not provide any support for his opinion as to lower extremity elevation." (R. at 27.) The ALJ also cited other evidence in support of her conclusion; for example, "While the claimant reported that elevating her lower extremities alleviated symptoms associated with her left foot prior to her neuroma excision and osteotomy, the medical record does not contain a similar statement during the period under consideration." (*Id.*) (citation omitted).

The ALJ, rather than any particular physician, is ultimately responsible for determining the RFC. 20 C.F.R. § 404.1546(c). The ALJ must consider "all the relevant evidence in [the] case record," including medical records, medical opinions, and symptom

---

[3] Plaintiff also notes that treatment notes from her podiatric surgeon, Todd R. Becker, D.P.M., directed her to elevate her legs. (Pl. Br. at 6.) However, this recommendation was limited to the first one to two months following her foot surgery. (R. 27, 444, 446, 453, 469.) Nothing in the record indicates that Dr. Becker intended for Plaintiff to keep her legs elevated for one-third of the workday in the following months. As the ALJ noted, "No other recommendation of this sort was made aside from the opinion of the claimant's primary care physician[.]" (R. 27.)

testimony provided by the claimant's "family, neighbors, friends, or other persons." *Id.* § 404.1546(a)(3). The Court finds that, although the ALJ did not incorporate Plaintiff's treating physician's opinion into the RFC, the "ALJ acted in accordance with [her] responsibility to determine the credibility of medical evidence, and [she] gave specific, legitimate reasons for discrediting" Dr. Clark's opinion. *Thomas*, 278 F.3d at 958.

In sum, the record generally supports the ALJ's finding that the objective medical evidence was inconsistent with Plaintiff's alleged limitations and Dr. Clark's opinion. Therefore, the ALJ did not err by assigning little weight to Dr. Clark's opinion.

## C.    Appointments Clause

Lastly, Plaintiff argues that remand is appropriate because the ALJ that conducted her hearing was not properly appointed under the Appointments Clause of the United States Constitution. (Pl. Br. at 8–12.) In *Lucia v. Securities & Exchange Commission*, 138 S. Ct. 2044 (2018), the U.S. Supreme Court held that the Securities and Exchange Commission's ("SEC") selection of ALJs violated the Appointments Clause in Article II of the United States Constitution. *Id.* at 2049. Because the SEC's ALJs were "Officers of the United States," the Court held that the exclusive means of appointing the ALJs was by the President of the United States, a court of law, or the head of a federal department. *Id.* at 2051. As none of these actors had appointed the ALJ at issue, the hearing was "tainted with an appointments violation" and the plaintiff was entitled to a new hearing before a properly appointed official. *Id.* at 2055.

In response to *Lucia*, the Commissioner of the Social Security Administration ratified the appointment of the agency's ALJs on July 16, 2018. *See* Emergency Message 18003 REV 2. Soon thereafter, the Administration issued SSR 19-1p, which laid out the effects of *Lucia* on cases pending at the Appeals Council. SSR 19-1p, 2019 WL 1324866 (March 15, 2019). For claims pending before the Appeals Council that were decided by an ALJ whose authority was challenged, the Appeals Council was to either remand for a hearing before a new ALJ or issue its own decision. *Id.* at *3–4. Here, Plaintiff argues that because her administrative hearing occurred on May 8, 2018—prior to the ALJs'

ratification on July 16, 2018—the ALJ was unconstitutionally appointed.

This Court, like others before it, does "not now decide whether *Lucia* applies to Social Security Administration ALJs." *Delores A. v. Berryhill*, No. ED CV 17-254-SP, 2019 WL 1330314, at \*10–11 (C.D. Cal. Mar. 25, 2019); *see also Camilli v. Berryhill*, No. 18-cv-06322-JSC, 2019 WL 3412921, at \*13 (N.D. Cal. July 29, 2019) ("While the Ninth Circuit has not directly spoken on the issue of preserving challenges under *Lucia* in the social security context, it has confirmed the general proposition that a social security claimant must exhaust issues before the ALJ to preserve judicial review.") (citing *Shaibi v. Berryhill*, 883 F.3d 1102, 1109 (9th Cir. 2017)). Regardless, Appointments Clause challenges are nonjurisdictional and can be forfeited if not timely asserted. *See Freytag v. Comm'r of Internal Revenue*, 501 U.S. 868, 878–79 (1991). Plaintiff does not dispute that she never raised this issue before the ALJ. (Pl. Br. at 9.) Because she failed to do so, Plaintiff waived this argument.

Courts have held, post-*Lucia*, that a social security plaintiff waives an Appointments Clause argument by failing to raise it before the ALJ. *See, e.g., Younger v. Comm'r of Soc. Sec. Admin.*, No. CV-18-02975-PHX-MHB, 2020 WL 57814, at \*5 (D. Ariz. Jan. 6, 2020) ("[T]he Court opts to follow suit with the other district courts in this circuit and finds Plaintiff forfeited her argument by failing to raise it before the ALJ."); *Samuel F. v. Berryhill*, Case No. CV 17-7068-JPR, 2018 WL 5984187, at \*2 n.6 (C.D. Cal. Nov. 14, 2018) ("To the extent *Lucia* applies to Social Security ALJs, Plaintiff has forfeited the issue by failing to raise it during his administrative proceedings."). This Court agrees and finds that, by failing to raise her Appointments Clause argument before the ALJ, Plaintiff waived this argument.[4]

---

[4] Plaintiff states for the first time in her reply brief that she "did in fact specifically offer an Appointments Clause objection based on *Lucia* to the Appeals Counsel—twice in fact (Tr. 237, 383)." (Reply at 5.) The record indicates that Plaintiff did raise the Appointment Clause argument in a cover letter enclosing her Request for Review of Hearing Decision/Order to the Appeals Council (R. at 237) and in a separate letter to the Appeals Council. (R. at 383.) However, because Plaintiff failed to raise it before the ALJ, she waived this argument.

1    Plaintiff also asserts that a waiver finding is improper because the "SSA

2    misleadingly assures claimants that their disability hearings are 'informal.'" (Pl. Br. at 12.)

3    This argument has no merit. The rules governing hearings before an ALJ are "less rigid

4    than those a court would follow." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1152 (2019). For

5    example, and "[m]ost notably," an ALJ may receive evidence that "would not be

6    admissible in court." *Id*. (citing 200 C.F.R. §§ 404.950(c), 416.1450(c)). However, Plaintiff

7    cites no authority indicating that this informality nullifies the requirement to preserve

8    arguments on appeal; and, as indicated, courts have consistently held that such a

9    requirement exists. Plaintiff's argument that Defendant now impermissibly asserts that the

10   hearing was "actually extremely formal" is without merit. (Pl. Br. at 12.)

11   **IV.    CONCLUSION**

12       Accordingly,

13   **IT IS ORDERED affirming** the July 16, 2018 decision of the Administrative Law

14   Judge (R. at 18–37).

15   **IT IS FURTHER ORDERED** directing the Clerk to enter final judgment

16   consistent with this Order and close this case.

17       Dated this 12th day of June, 2020.

18

19

20                    Michael T. Liburdi
21                    United States District Judge

22

23

24

25

26

27

28